**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DINAH YUKICH,

*Plaintiff*,

v.

USA FENCING, *et al.*,

Defendants.

Case No. LKG-26-4238

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND**

## TABLE OF CONTENTS

Page(s)

I. Introduction ....................1

II. Background ....................4

III. Argument ....................5

A. Presumption Against Removal ....................5

B. Diversity Jurisdiction ....................6

a. Standard ....................6

b. There Is No Basis for Diversity Jurisdiction ....................7

i. This Action Does Not Meet the Amount in Controversy Threshold to Satisfy Diversity Jurisdiction ....................7

ii. Defendants' Statement That Maryland State Law Permits an Award of Attorneys' Fees Is Insufficient to Meet Their Burden of Proof, and the Attorneys' Fees Do Not Meet the Jurisdictional Threshold ....................9

iii. Plaintiff Is the Master of Her Own Complaint ....................12

C. Federal Question Jurisdiction ....................14

a. Standard ....................14

b. There Is No Basis for Federal Question Jurisdiction ....................15

i. No Federal Question Appears on the Face of the Well-Pleaded Complaint ....................15

ii. This Case Is Not Among the "Special and Small Category" of the State Law Cases That Turn on a Necessary and Substantial Federal Issue ....................16

1. The Complaint Does Not "Necessarily Raise" Any Federal Questions ....................16

2. No Federal Issues Are "Actually Disputed" in Plaintiff's Complaint ....................17

3. No Federal Questions Are "Substantial." ........................................18

4. Antidiscrimination Law Is a Core State Police Power That Would Be Disrupted by Preempting State Court Jurisdiction ..........21

iii. Plaintiff's Claims Are Not Completely Preempted by a Federal Law ...24

IV. Conclusion ...........................................................................................................27

## TABLE OF AUTHORITIES

## CASELAW

Page(s)

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) .......... 15

*Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206 (1906) .......... 7

*Ayers v. CIOX Health, LLC*, 735 F. Supp. 3d 607(D. Md. 2024) .......... 10

*Barnes v. State ex rel Pinkney*, 236 Md. 564 (1964) .......... 22

*Baron v. Directv, LLC*, No. JKB-16-3145, 2016 WL 6078263 (D. Md. Oct. 17, 2016) .......... 10, 11

*Belhagen v. Amateur Basketball Association*, 884 F.2d 524 (10th Cir. 1989) .......... 2, 27

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) .......... 25

*Bennett v. USA Water Polo, Inc.*, No. 08-23533-CIV, 2009 WL 1089480 (S.D. Fla. Apr. 21, 2009) .......... 25

*Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423, 445 (2014) .......... 22

*Brennan v. Stevenson*, No. JKB-15-2931, 2015 WL 7454109 (D. Md. Nov. 24, 2015) .......... 7

*Burrell v. Bayer Corporation.*, 918 F.3d. 372 (4th Cir. 2019) .......... 1, 3, 14, 18, 24

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) .......... 15, 16

*Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011) .......... 6

*Cossentino Contracting Co., Inc. v. CSX Transportation, Inc.*, No. 24-CV-1883-ABA, 2024 WL 4644653, at *4 (D. Md. Oct. 30, 2024) .......... 7

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) .......... 6, 9

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006) .......... 14

*Foschi by Foschi v. U.S. Swimming, Inc.*, 916 F.Supp. 232 (E.D. NY 1996) .......... 26

*Francis v. Allstate Ins. Co.*, 709 F.3d 362 (4th Cir. 2013) .......... 7, 8, 10

*Friedler v. Stifel, Nicolaus, & Co., Inc.*, 108 F. 4th 241 (4th Cir. 2024) .......... 18

*Gonzales v. United States Center for Safe Sport*,
374 F. Supp. 1284 (S.D. Fl. 2019) .......... 19, 26

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ..... 14, 16, 17, 18

*Gunn v. Minton*, 568 U.S. 251 (2013) .......... 5, 14, 16, 18, 21

*Holiday Universal Club of Rockville, Inc. v Montgomery Cnty.*,
67 Md. App. 568 (1986) .......... 22, 23, 24

*JTH Tax, Inc. v. Frashier*, 624 F.3d 635 (4th Cir. 2010) .......... 6, 8, 9, 12

*KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025) .......... 21

*Keene Corp. v. United States*, 508 U.S. 200 (1993) .......... 19

*Kelly v. Bank of America, N.A.*, No. CCB-12-2850, 2013 WL 3168018
(D. Md. June 18, 2013) .......... 11, 12

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) .......... 5

*Lontz v. Tharp*, 413 F.3d. 435 (4th Cir. 2005) .......... 24

*Martin v. Martin*, No. ELH-16-1732,
2016 WL 3362662 (D. Md. June 16, 2016) .......... 7

*Mayor & City Council of Baltimore v. BP P.L.C*, 31 F.4th 178
(4th Cir. 2022) .......... 3

*Merrell Dow Pharms. v. Thompson*, 478 U.S. 804 (1986) .......... 20

*Michels v. USOC*, 741 F.2d 155 (7th Cir. 1984) .......... 25

*Ministry of Defense of State of Kuwait v. Naffa*, 105 F.4th 154 (4th Cir. 2024) .......... 6

*Momin v. Maggiemoo's Intern., LLC*, 205 F. Supp. 2d. 506 (D. Md. 2002) .......... 7

*Montgomery Citizens League v. Greenhalgh*, 253 Md. 151 (1969) .......... 23

*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148 (4th Cir. 1994) .......... 6

*Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761 (D. Md. 2018) .......... 11

*Palisades Collections LLC v. Shorts*, 552 F.3d 327 (4th Cir. 2008) .......... 6

*Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005) .......... 17, 18

*Porsche Cars North America Inc. v. Porsche.net*, 302 F.3d. 248 (4th Cir. 2002)........................ 12

*Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016)................................................ 17

*Prince George's County v. Watts*, 494 Md. 615 (2026) ............................................................. 24

*Republican National Committee v. North Carolina State Board of Elections*,
120 F.4th 390 (4th Cir. 2024) ........................................................................................... 21

*Risdorfer v. Ascentage Pharma Grp. Inc.*, No. ELH-23-987,
2023 WL 4664036 (D. Md. July 19, 2013)........................................................................ 25

*San Francisco Arts and Athletics, Inc. v. U.S. Olympic Committee*,
483 U.S. 522 (1987).................................................................................................... 1, 2

*Scott v. Cricket Communications, LLC.*, 865 F.3d. 189 (4th Cir. 2017)........................................ 9

*Seidenberg v. McSorleys' Old Ale House, Inc.*,
308 F. Supp. 1253 (S.D.N.Y. 1969)................................................................................. 15

*Simms Showers LLP v. Jones*, No. 23-CV-2827-ABA, 2025 WL 2720186
(D. Md. Sept. 24, 2025) .................................................................................................... 25

*Skidmore v. Norfolk Southern Railway Company*, 1 F. 4th 206 (4th Cir. 2021) ...................... 4, 25

*Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001) ................................. 26

*Small Bus. Fin. Sols., LLC v. JMA Servs., Inc.*, No. DKC 21-2283,
2023 WL 1784683 (D. Md. Feb. 6, 2023) ........................................................................... 6

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) ................................ 12, 13

*Strawn v. AT & T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008)..................................................... 6

*Sunoco Products Co. v. Physicians Health Plan, Inc.*,
388 F.3d 366 (4th Cir. 2003) ....................................................................................... 3, 14

*Tighe v. Osborne* 149 Md. 349, 131 A. 801 (1925) ...................................................................... 22

*Trimble v. Entrata, Inc.*, 791 F. Supp. 3d 615 (D. Md. 2025),
*aff'd*, 186 F.4th 251 (4th Cir. 2026)..................................................................................... 5

*Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300 (4th Cir. 2021)........................................................ 16

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................ 21

*Yukich v. Premier Fencing Club, et al.*, No. 2:25-cv-18011-KSH-AME (D.N.J.) ..... 5

## STATUTES

28 U.S.C. § 1331 ..... 5, 14, 26

28 U.S.C. § 1332 ..... 5, 6

28 U.S.C. § 1441 ..... 5

28 U.S.C. § 1446 ..... 6

28 U.S.C. § 1447 ..... 5

36 U.S.C. § 220501 ..... 2, 19

36 U.S.C. § 220503 ..... 27

36 U.S.C. § 220505 ..... 2,19, 20, 26

36 U.S.C. § 202509 ..... 5

36 U.S.C. § 220521 ..... 19

36 U.S.C. § 220524 ..... 2, 20, 21

36 U.S.C. § 220527 ..... 20

42 U.S.C. § 2000a ..... 15, 17

Md. Code Ann., Local Gov't § 10-102 ..... 22, 23

Md. Code Ann., State Gov't § 20-1202 ..... 24

P.G. County Code § 1-101 ..... 22

P.G. County Code § 2-220 ..... 15, 22

## CONSTITUTIONAL PROVISIONS


Md. Const., Art. XI-A. .......... 23

Md. Const., Art. XI-A, § 3. .......... 22

Md. Const., Art. XI-A, § 4. .......... 8

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

## I. Introduction

Defendants filed their Notice of Removal on the basis of diversity and federal question jurisdiction. As it relates to diversity, Plaintiff Dinah Yukich does not dispute the fact that she is a resident of Maryland, and the defendants are in Colorado and New Jersey. Ms. Yukich agrees that the parties are in different states. However, the second prong for diversity jurisdiction – the amount in controversy- is not satisfied. As discussed below, the value of this claim does not meet or exceed $75,000.

Next, Defendants argue that Ms. Yukich's claim of being excluded from a place of public accommodation in violation of Prince George's County law is in fact a federal question. Defendants' arguments, however, do not create a federal question that gives this Court jurisdiction. At best, Defendants' arguments are defenses. Courts repeatedly confirm that defenses, even those based in federal law, are not a basis for removal to federal court based on federal question jurisdiction. *See, e.g.*, *Burrell v. Bayer Corp*., 918 F.3d 372, 381 (4th Cir. 2019) ("It is not enough that federal law becomes relevant by virtue of a "defense . . . anticipated in the plaintiff's complaint.").

Defendants' defenses are without merit and thus cannot confer federal jurisdiction. First, Defendants argue that USA Fencing's policy prohibiting transgender women from participating in women's fencing events ("Trans Ban") is federally mandated. The Trans Ban is not federally mandated. No governmental entity mandated that USA Fencing implement the Trans Ban. The U.S. Olympic and Paralympic Committee ("USOPC") is a private organization. *San Francisco Arts and Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522, 543 (1987). It is not a governmental agency with rulemaking authority. *Id.*

Second, Defendants contend that Plaintiff's claims arise out the Ted Stevens Act ("Sports Act"). ECF No. 1 ¶ 33. This is also not true. Plaintiff's claims arise solely out of the Prince George's County Code ("PG County Code"). The Sports Act is nothing more than a charter that creates the USOPC.[1]

Third, Defendants claim that USA Fencing was statutory obligated as a National Governing Body ("NGB") to implement the Trans Ban. ECF No. 1 ¶ 33. This is not true. The Sports Act requires NGBs to follow state law. 36 U.S.C. §220524(b) ("Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law.").

Lastly, Defendants claim that Ms. Yukich is challenging the authority of the USOPC. ECF No. 1 ¶ 33. Yet the USOPC is not a party to this case. Furthermore, as previously explained, the USOPC is not a governmental agency or rulemaking authority. Any link the USOPC may have to Defendants' defense here does not provide a basis for federal subject matter jurisdiction.

Defendants' purported bases for federal question jurisdiction are merely red herring positions meant to distract from the long-established test for federal question jurisdiction. There

---

[1] The Sports Act is found in Title 36 of the U.S. Code. *See* 36 U.S.C. § 220501, *et seq.* Title 36 simply identifies all organizations that are federally chartered as a "Patriotic and National Organization." *Id.* The USOPC is named alongside the American National Theater and Academy, American Gold Star Mothers, Little League Baseball, Paralyzed Veterans of America, and the Navy Wives Club of America. *Id.*

These organizations are not government agents with rule-making authority. *See Belhagen v. Amateur Basketball Association*, 884 F.2d. 524, 525 (10th Cir. 1989); *see also San Francisco Arts and Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522, 543 (1987) ("The fact that Congress granted it a corporate charter does not render the [USOPC] an agent of the government."). The Sports Act is nothing more than a federal charter that creates the United States Olympic and Paralympic Committee ("USOPC"), but does not give it the authority of being a federal agency of any sort. 36 U.S.C. § 220505.

are three (3) ways to establish federal question jurisdiction, and Defendants do not satisfy any of these requirements. First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Burrell*, 918 F.3d at 378. Second, federal question jurisdiction is found when despite a state law basis, the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Mayor & City Council of Baltimore v. BP P.L.C*, 31 F.4th 178, 209 (4th Cir. 2022). Third, is when the complaint is based on an area of the law where Congress, "so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character . . . ." *Sunoco Products Co. v. Physicians Health Plan, Inc.*, 388 F.3d 366, 371 (4th Cir. 2003).

Ms. Yukich claims that Defendants violated the PG County Code when they prohibited her from participating in the women's events because she is transgender. *See* ECF No. 1-1 ¶¶ 44-60. She was excluded from accessing a place of public accommodation because she is transgender. *Id.* There is no federal law that prohibits exclusion from places of public accommodation based on sex and gender identity. This case cannot arise under a federal law, because there is no federal law on this issue. In addition, as discussed below, there is no federal issue (1) necessarily raised, (2) actually disputed, (3) substantial, or (4) capable of resolution without upending our federalist system. Finding that a PG County Code violation arises under the laws or Constitution of the United States would open the floodgates to conferring federal subject matter jurisdiction in cases where the discriminatory acts stem solely from local and state law—not to mention completely disregard the states' police powers to police discrimination within their borders. Lastly, Plaintiff's claims under the PG County Code are not completely

preempted by any area of federal law.[2]

## II. Background

Dinah Yukich's Complaint alleges that she was discriminated against when she was excluded from competing in the women's events at the Cherry Blossom Open ("Cherry Blossom Open" or "Tournament") held at the University of Maryland in its Reckford Armory building, in Prince George's County, Maryland. ECF No. 1-1 ¶¶ 44-60. This Tournament is open to the public, meaning members of the public could spectate. *Id.* ¶ 32. Members of the public were also invited to participate. *Id.*

To remedy this breach of the PG County Code, Dinah Yukich filed suit in state court against USA Fencing and Jessica Saxon (together "Defendants"). ECF No. 1-1. Her action was initiated in the Circuit Court for Prince George's County, Maryland, Civil Division on August 26, 2026. *Id.* at 12. Ms. Yukich's complaint brought a claim under the PG County Code based on the fact that she was excluded from a place of public accommodation because she is a transgender woman. *Id.* ¶¶ 44-60.

Plaintiff's entire complaint is based on a violation of the Prince George's County Code. *Id.* Ms. Yukich was excluded from a two (2) day competition that was hosted by the University of Maryland in Prince George's County. *Id.* In her complaint, Plaintiff seeks an injunction or a cease and desist order requiring Defendants to let her fence in the women's events at fencing events managed or sanctioned by Defendants in Prince George's County. *Id.* at 11.

---

[2] Courts recognize three statutes that completely preempt any state law claims: the Employee Retirement and Income Security Act ("ERISA"), the Labor Management Relations Act ("LMRA"), and the National Bank Act. *Skidmore v. Norfolk Southern Railway Company*, 1 F. 4th 206, 212 (4th Cir. 2021).

On October 8, 2026, Defendants filed a Notice of Removal of this Action pursuant to 28 U.S.C. §§ 1331, 1332 and 28 U.S.C. § 1441. The removal was based on diversity jurisdiction and federal question jurisdiction. Defendants contend removal is proper because the parties are diverse and the complaint meets the jurisdictional threshold of $75,000.[3] Defendants also claim that the issue of exclusion from a place of public accommodation because of transgender status involves a federal issue arising under the United States Constitution, laws or treaties of the United States.[4]

This motion to remand is timely filed under 28 U.S.C. § 1447.

## III. <u>Argument</u>

### A. Presumption Against Removal

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). As such, federal courts are authorized to hear cases only as provided by the Constitution and by federal statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Removal statutes are strictly construed, and the Court must resolve any doubts about federal jurisdiction in favor of remand. *Trimble v. Entrata, Inc.*, 791 F. Supp. 3d 615, 622 (D. Md. 2025), *aff'd*, 186 F.4th 251 (4th Cir. 2026). The federal removal statute is to be construed

---

[3] Plaintiff does not contest that there is diversity of parties in this action, as Plaintiff is a resident of Maryland and Defendants are residents of Colorado and New Jersey. ECF No. 1-1 at 1. But, as will be discussed, the value of the case as set forth on the face of Plaintiff's complaint is under $75,000, thereby requiring the case be remanded.

[4] Defendants assert that another civil action, *Yukich v. Premier Fencing Club, et al.*, No. 2:25-cv-18011-KSH-AME (D.N.J.), was successfully removed to the United States District Court for the District of New Jersey. ECF No. 1 at ¶ 9. This is another attempt by Defendants to distract the Court. They have omitted the fact that the removal in that case was brought by the USOPC – referred to as the "corporation" in the Sports Act. Under the Sports Act, the corporation has the right to remove all cases to federal court. As discussed in more detail in this Motion, the Sports Act provides no such mechanism for NGBs. 36 U.S.C. § 202509(b)(9).

"strictly because of the significant federalism concerns implicated." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 334 (4th Cir. 2008); *see also Mulcahey v. Columbia Organic Chems. Co*., 29 F.3d 148, 151 (4th Cir. 1994). In addition to being strictly construed, the party seeking to remove a case to federal court has the burden of establishing subject matter jurisdiction. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008).

**B. Diversity Jurisdiction**

**a. Standard**

Federal courts enjoy original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interests or costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a), *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). A defendant seeking removal must set forth a "plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Even more, a defendant must demonstrate the jurisdictional threshold by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval of the action is proper on the basis of an amount in controversy asserted [by defendant] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").

When evaluating the amount in controversy for the purposes of jurisdiction, courts generally accept the sum demanded in good faith in the complaint. *JTH Tax. Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010); *Ministry of Defense of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024); *Small Bus. Fin. Sols., LLC v. JMA Servs., Inc.*, No. DKC 21-2283, 2023 WL 1784683, at *2 (D. Md. Feb. 6, 2023) ("[T]he 'general rule' in cases removed on

diversity grounds is that the amount in controversy is 'the sum demanded in good faith in the initial pleading.'").

When there are non-monetary demands in a complaint, the amount in controversy is measured by the value of such non-monetary demands. *Cossentino Contracting Co., Inc. v. CSX Transportation, Inc.*, No. 24-CV-1883-ABA, 2024 WL 4644653, at *4 (D. Md. Oct. 30, 2024). The courts evaluate the value of the object of the litigation. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013)

Finally, when a statute permits the awarding of attorneys' fees, such an award can be taken into account when evaluating the amount in controversy. *Francis v. Allstate, Ins. Co.*, 709 F.3d. 362, 368 (4th Cir. 2013). Evaluation of the value of the amount in controversy is made at the time of the application at removal. *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 212 (1906). Thus far, in the present case, the only attorneys' fees incurred are to draft the complaint and the instant Motion for Remand.

**b. <u>There Is No Basis for Diversity Jurisdiction.</u>**

**i. This Action Does Not Meet the Amount in Controversy Threshold to Satisfy Diversity Jurisdiction.**

When a defendant asserts that the amount in controversy has been met, the court retains jurisdiction only if the defendant has put forth "competent proof" that the amount in controversy meets or exceeds $75,000. *Momin v. Maggiemoo's Intern., LLC*, 205 F. Supp. 2d 506, 510 (D. Md. 2002). Such proof requires a defendant to establish by a preponderance of the evidence that the amount meets or exceeds $75,000. *Martin v. Martin*, No. ELH-16-1732, 2016 WL 3362662 at *4 (D. Md. June 16, 2016). In deciding the matter, the court may "not engage in conjecture, speculation or judicial star gazing to determine jurisdiction." *Brennan v. Stevenson*, No. JKB-15-2931, 2015 WL 7454109 (D. Md. Nov. 24, 2015).

When a complaint demands injunctive and declaratory relief, as Ms. Yukich's complaint does, such requests must be valued in determining the amount-in-controversy for jurisdictional purposes. *JTH Tax*, 624 F.3d at 639. When faced with a request for injunctive relief, a court must "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of the two figures: the injunction's worth to the plaintiff or its costs to the defendant." *Id.; see also Francis v. Allstate Ins., Co.*, 709 F.3d. 362, 367 (4th Cir. 2013).

Here, Ms. Yukich's complaint clearly states her damages do not exceed $74,999. ECF No. 1-1 at 11. With regard to the relief sought in her Complaint, Ms. Yukich prayed for a tailored and narrow "declaration that the actions of the Defendants were individually and collectively discriminatory under the controlling laws of Prince George's County, Maryland." *Id.* Based on Defendants' violations of the Prince George's County Code ("PG County Code"), Plaintiff sought "an injunction or cease and desist order requiring Defendants to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants." *Id.*

In their removal petition, Defendants aver that that Ms. Yukich is seeking a nationwide injunction. ECF No. 1 at ¶ 24. Plaintiff is not seeking a nationwide injunction. D.E. 1-1. Nowhere in Ms. Yukich' complaint does she seek a nationwide injunction. *Id.* Plaintiff simply brought a case based on a violation of the county code in her home state. The facts of the case are limited to a fencing event that was open to the public that took place in Prince George's County, Maryland. *Id.* Further, the relief sought relates only to the PG County Code, which is a local law. *See* Md. Const., Art. XI-A, § 4. By definition, a Local Law cannot apply to two (2) or more geographical subdivisions. *Id.* The PG County Code only applies to Prince George's County. It does not apply to any other county in the nation. Defendants are therefore incorrect in stating Plaintiff's complaint seeks a nationwide injunction.

With regard to the value of the injunctive relief sought in Plaintiff's complaint, it is obvious that a county-wide injunction does not come even close to meeting the threshold of $75,000. Applying the standard set forth in *JTH Tax*, the injunction's monetary worth to the plaintiff is less than zero as she would actually have to pay USA Fencing the registration fees.[5] Plaintiff would have to pay approximately $157.00 to participate in two (2) women's events at the Cherry Blossom Open. Further, the injunction would cost USA Fencing nothing. In fact, the injunction would result in USA Fencing making money through acceptance of Ms. Yukich's registration fees.

Lastly, as it relates to the costs incurred by Ms. Yukich, she has none. She was not permitted to register for the event, so she expended no money in her attempt to register for the Cherry Blossom Open. ECF No. 1-1.

**ii. Defendants' Statement That Maryland State Law Permits an Award of Attorneys' Fees Is Insufficient to Meet Their Burden of Proof, and the Attorneys' Fees Do Not Meet the Jurisdictional Threshold.**

Defendants submit that attorneys' fees should be included in the analysis of the value of this action. ECF No. 1 at ¶¶ 25-26. While it is true that attorneys' fees are considered when evaluating jurisdiction, the proponent for the removal must provide more than just speculation that the attorneys' fees would meet or exceed the $75,000 threshold. *Scott v. Cricket Commc'ns, LLC.*, 865 F.3d. 189, 197 (4th Cir. 2017). In *Dart v. Cherokee Basin Operating Co., LLC v. Owens*, the Supreme Court confirmed that a defendant's notice of removal needs to include "a plausible allegation that the amount in controversy exceeds the judicial threshold." 574 U.S. 81, 89 (2014). Defendants fail to put forth such a plausible allegation. *See* ECF No. 1 at ¶¶ 25-26.

[5] The fees for the 2027 Cherry Blossom Open are $47.00 to enter the tournament, plus a $55.00 registration fee for each event.

Rather, Defendants assert in conclusory fashion that merely because the statute provides for attorneys' fees, the total amount at stake would exceed $75,000 when attorneys' fees are coupled with the cost of the injunction (which as explained above would actually make USA Fencing money), potential punitive damages, and emotional distress damages.

Defendants carry the burden of demonstrating by a "preponderance of the evidence" that the value of this action meets the jurisdictional threshold. *Ayers v. CIOX Health, LLC*, 735 F. Supp. 3d 607, 612 (D. Md. 2024). Defendants cite to *Francis v. Allstate Ins. Co.*; however, that case is inapposite to the instant action. 709 F.3d. 362, 368 (4th Cir. 2013). In that case, there was a demand for declaratory judgment for legal costs in a separate underlying action. *Id.* The fees in the underlying action were $66,347. *Id.* The Fourth Circuit confirmed the district court's finding that the defendant met its burden because the cost to pursue the declaratory judgment would exceed $8,653, which is the difference between the $75,000 jurisdictional threshold and the amount spent on the underlying action ($66,347). *Id.*

Ms. Yukich's case is not comparable to *Francis*. She did not spend any money to get into the Cherry Blossom Open as she was forbidden from even registering. ECF No. 1-1 at ¶¶ 35-43. Further, the only attorneys' fees and costs to date are those relating to drafting and filing the August 26, 2026 complaint and the present motion.[6]

Defendants mistakenly rely on *Baron v. Directv, LLC*, as a basis to declare that courts reject "artificial damages limitation" to avoid federal jurisdiction. ECF No. 1 at ¶ 21. This characterization is a far cry from what the case stands for. In that case, the plaintiff included an

---

[6] This case revolves around a complaint that was filed on August 26, 2026. As noted by Defendants, Plaintiff voluntarily dismissed her July 9, 2026 Complaint and filed a subsequent complaint the following month. ECF No. 1 at ¶¶ 16-18. The only attorney time permitted to be evaluated is the time spent preparing the already drafted complaint to be filed in state court in the present case.

ad damnum clause that sought over $200,000 in damages. No. JKB-16-3145, 2016 WL 6078263, at *1 (D. Md. Oct. 17, 2016). The plaintiff in that case then tried to amend the amount in controversy through a footnote in his motion to remand. *Id.* Here, Ms. Yukich filed a complaint in state court based on county code; her complaint contains an honest valuation of the damages, which are less than $75,000; and Defendants have not demonstrated otherwise by a preponderance of any competent evidence. ECF No. 1-1.

This case is more akin to *Ndzerre v. Liberty Power Corp., LLC*, where this Court remanded the matter because the defendant failed to carry the burden by a preponderance of the evidence that diversity jurisdiction was proper. 318 F.Supp.3d 761, 766 (D. Md. 2018). The Court found that the defendant had "at best provided speculative and unsupported assertions that some unspecified amount of attorneys' fees . . . will exceed $75,000." *Id.* The defendant in *Ndzerre*, just like USA Fencing and Jessica Saxon here, did not assert any justification as to why attorneys' fees would push damages over $75,000. *Id.*

Similarly, in *Kelly v. Bank of America, N.A.*, this Court remanded the matter to state court because the defendants attempted to argue that taking the case all the way through discovery would put the fees into an amount that would tip the case beyond $75,000. No. CCB-12-2850, 2013 WL 3168018, *3 (D. Md. June 18, 2013). This Court explained:

> The defendants contend that "taking this matter through trial, including discovery and depositions, would reasonably require at least 83.4 hours" of the [plaintiff's] counsel's time, which, at $300 per hour for his services, would place their attorneys' fees above $25,000. Such a claim in this case is purely speculative, however—the defendants offer no evidence to support it.

*Id.* The plaintiff in *Kelly* claimed damages in the amount of $50,000. *Id.* In weighing whether the attorneys' fees allowed by the statute would tip the case into the domain of $75,000, this Court rejected the defendants' speculative argument and granted the remand. *Id.* at *4.

Here, Defendants' argument in their Notice of Removal mirrors the speculation rejected in *Kelly*. Defendants have not even bothered to estimate what Plaintiffs' attorneys' fees could be at this very early point in the litigation.

The evaluation of whether a case can be removed to federal court is conducted at the time the removal is filed. *Porsche Cars North America Inc. v. Porsche.net*, 302 F.3d. 248, 255 (4th Cir. 2002) (*see also JTH Tax*, 624 F.3d at 638. At this juncture, the only attorney time spent on this filed action has been preparing and filing the August 26, 2026, complaint and preparing the instant Motion for Remand.

Defendants contend they have established by a preponderance of the evidence that the amount in controversy exceeds $75,000 because the statute affords an award of attorneys' fees that could potentially bring the total amount recovered in this case above $75,000, when potential punitive and emotional distress damages, as well as the value of the injunction, are accounted for. ECF No. 1 at ¶¶ 24-27. It is black letter law that the conditions that create diversity jurisdiction…need not survive through the life of the litigation. Rather, a"[A] court determines the existence of diversity jurisdiction ''at the time the action is filed'' regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy."); With no attempt to assign monetary value to the attorneys' fees to date or the injunction, Defendants' *ipso facto* reasoning falls significantly short of meeting the preponderance of the evidence standard for establishing federal jurisdiction.

**iii. Plaintiff Is the Master of Her Own Complaint.**

Defendants' reliance on *St. Paul Mercury Indemnity Co. v. Red Cab Co.* is misplaced. ECF No. 1 at ¶ 19. Defendants rely on *St. Paul* for the proposition that a plaintiff cannot reduce

the amount in controversy after jurisdiction attaches, but that case simply does not apply to the instant fact pattern, where jurisdiction has never attached.

In *St. Paul*, after the case was already in federal court, the plaintiff twice amended the complaint and significantly reduced the amount claimed in damages. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 284-85 (1938). The Court of Appeals refused to hear the matter because the amount in controversy as set forth in the complaint was insufficient to confer jurisdiction. *Id.* The Supreme Court, however, ruled that the Circuit Court should have retained jurisdiction. *Id.* at 294. ("…the Plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election.").

Here, the issue is the jurisdiction valuation of Ms. Yukich's complaint that was filed in state court. ECF No. 1-1. This is not a situation where after a case has been removed, and federal subject matter jurisdiction already established, the plaintiff then seeks to get it back to state court by amending the complaint and lowering the amount in controversy. Thus, *St. Paul* is inapposite.

In fact, Ms. Yukich simply followed the advice of the Supreme Court when she voluntarily dismissed her initial July 9, 2026 action and filed a subsequent complaint on August 26, 2026. *St. Paul Mercury Indemnity Co.*, 303 U.S. at 294 ("If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

Ms. Yukich has every right to bring this action in the Circuit Court of Prince George's County—the county where the harm occurred—and to have this local matter be decided under the law specific to that county. Accordingly, this Court should grant her motion to remand.

### C. Federal Question Jurisdiction

#### a. Standard

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Gunn*, 568 U.S. at 257 (quoting 28 U.S.C. § 1331). *Gunn* explained that a case can "arise under" federal law in three ways.

First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Id.*; *see also Burrell*, 918 F.3d at 378 ("Cases generally are deemed to 'arise under' federal law when it is a federal law, not state law, that creates the cause of action.").

Second, federal courts may still have federal question jurisdiction "even where a claim finds its origins in state rather than federal law." *Id.* at 258. Federal courts will have jurisdiction over such a state claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also BP P.L.C*, 31 F.4th at 209. Federal question jurisdiction via this second path requires that *each* of those four elements is met, and the Supreme Court described such cases as being of a "special," "small," and "slim category." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006).

A third, vanishingly rare path, is "complete preemption" of state law by federal law. "Complete" preemption is where Congress "so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character . . . ." *Sunoco Prods. Co. v. Physicians Health Plan, Inc.*, 388 F.3d 366, 371 (4th Cir. 2003). This is a limited exception to the "well-pleaded complaint" rule: it requires a determination by the court that "the pre-emptive

force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

**b. There Is No Basis for Federal Question Jurisdiction.**

**i. No Federal Question Appears on the Face of the Well-Pleaded Complaint.**

The first path to "arising under" jurisdiction does not apply because federal law did not create Ms. Yukich's cause of action. Ms. Yukich's claim is based exclusively on county public accommodations code. No determination of a federal law is an essential element to Ms. Yukich's claim under the Prince George's County Code.

Plaintiff's PG County Code claim revolves on the following three questions: (1) was this a place of public accommodation, (2) is plaintiff a member of a protected class, and (3) was she denied equal treatment on that basis. *See* P.G. County Code § 2-220. None of those questions requires construing a word of federal law.

Federal law clearly does not create the right of action here. A court need not address federal law at all in determining whether Plaintiff's exclusion from a place of public accommodation violates the Prince George's County Code. Thus, Plaintiff's PG County Code claim does not necessarily raise any issues of federal law.

Even more, it is impossible to argue that Ms. Yukich's claims turn on a construction of federal law because there is no federal law that protects against sex discrimination in places of public accommodation. *See* 42 U.S.C. § 2000a (providing no discrimination in any place of public accommodation based on race, color, religion, or national origin with no mention of gender and/or sex); *Seidenberg v. McSorleys' Old Ale House, Inc.*, 308 F. Supp. 1253, 1255 (S.D.N.Y. 1969) ("[T]here exists no proscription against discrimination on the basis of sex in public accommodations."); *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 613-614 (2023)

(Sotomayor, J., dissenting) (Confirming that no federal statute prohibits public accommodations from discrimination on the basis of sex.) There is no determination of a federal law that can be made in order to bring a cause of action under the PG County Code. Ms. Yukich had no choice but to bring this lawsuit under county law; she has no recourse under federal law.

Under the "well-pleaded complaint rule," a case ordinarily is not removable on federal question grounds unless the federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar,* 482 U.S. at 392. For all the reasons just stated, there is not a single federal question presented on the face of Ms. Yukich's complaint.

Lastly, Defendants' theory seems to be that federal law required them to exclude Ms. Yukich. ECF No. 1. That is a defense. A federal defense never supports removal. *Caterpillar*, 482 U.S. at 392–93 ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of federal preemption.") As such, this case must be remanded back to the state court where it was filed.

**ii. This Case Is Not Among the "Special and Small Category" of State Law Cases That Turn on a Necessary and Substantial Federal Issue.**

Because federal law did not create the basis for Ms. Yukich's claim, Defendants must establish that this case fits within the "special and small category" of cases, as outlined in *Grable* and *Gunn*, that turn on a necessary and substantial federal issue. The federal issue must be (1) "necessarily raised, (2) actually disputed, (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance approved by congress." *BP P.L.C*, 31 F.4th at 209. This test is not a balancing test. Every element is required.

**1. The Complaint Does Not "Necessarily Raise" Any Federal Questions.**

For a federal question to be "necessarily raised," the state law must turn on some construction of federal law. *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 306 (4th Cir. 2021);

*Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005) ("[F]or removal to be proper under the substantial federal question doctrine, a plaintiff's ability to establish the necessary elements of his state law claims must rise or fall on the resolution of a question of federal law.") A federal issue is not "necessarily raised" where the state claim can be resolved on non-federal grounds. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 304 (4th Cir. 2016) ("[A] claim 'necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue.'").

In their removal petition, Defendants cite to the Sports Act. Here, however, Ms. Yukich could win or lose the PG County Code claim without the state court ever deciding what the federal Sports Act requires. That is because her claim is based in county public accommodations law and does not turn on any federal law. Again, no federal law protects against sex discrimination in places of public accommodation. *See* 42 U.S.C. § 2000a (providing no discrimination in any place of public accommodation based on race, color, religion, or national origin, with no mention of gender and/or sex). Thus, there is no determination of a federal law that can be made in order to bring a cause of action under the PG County Code.

### 2. No Federal Issues Are "Actually Disputed" in Plaintiff's Complaint.

The "actually disputed" element turns on whether a federal issue must be decided to resolve a plaintiff's state law claim. For example, in *Grable* the plaintiff "premised its superior title claim [in a state quiet title action] on the IRS's failure to give adequate notice, as defined by federal law. Whether Grable received notice is an essential element of its quiet title claim, and the federal statute's meaning is actually disputed." *Grable*, 545 U.S. 308, 314-15.

No federal law is likewise "actually disputed" by Ms. Yukich's Complaint. She has not brought a civil rights claim under federal constitutional law artfully pleaded as a state law claim;

and proof of her claims does not rely on the resolution of any issue of federal law. The only issues that Ms. Yukich raises under the PG County Code are factual, not legal: was there a place of public accommodation, is she a member of a protected class, and was she denied access on that basis. *See Burrell*, 918 F.3d at 385 ("As a practical matter, a 'substantial' question generally will involve a 'pure issue of law' rather than being 'fact-bound' and situation specific.")

Even if there were a federal law that governed sex discrimination in places of public accommodation (which there is not), Plaintiff would have every right to bring her cause of action under state, and not federal law, so long as she does not ground her claims on breach of federal law. *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (Plaintiff is the "master of the claim; . . . she may avoid federal jurisdiction by exclusive reliance on state law.").

**3. No Federal Questions Are "Substantial."**

The "substantiality" inquiry under *Grable* is exacting: it looks to the importance of a federal issue to "the federal system as a whole," not to litigants. *Gunn*, 568 U.S. at 260. The inquiry is focused on the "importance of the issue to the federal system as a whole." *Friedler v. Stifel, Nicolaus, & Co., Inc.*, 108 F. 4th 241, 247 (4th Cir. 2024). For example, in *Grable*, a substantial federal issue presented in a state law quiet title claim that disputed the IRS's sale of property seized for tax delinquency because the "meaning of a federal tax provision is an important federal-law issue that belongs in federal court." 545 U.S. at 315.

No "substantial" federal issues are posed by Plaintiff's uncomplicated county law-based public accommodations discrimination claim. This is underscored by Congress's decision regarding which entities may remove state actions to federal court. While Congress explicitly gave the USOPC (which is not a defendant here) the right to remove any claims brought against it in state court to federal court, it granted no such right to NGBs such as USA Fencing.

Congress specifically addressed removal jurisdiction in the Ted Stevens Amateur Sports Act:

> The corporation may –
>
> ….
>
> 9. sue and be sued, except that **any civil action brought in a State court against the corporation and solely relating to the corporation's responsibilities under this chapter shall be removed, at the request of the corporation, to the district court of the United States in the district in which the action was brought**, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenship of the parties involved, and except that neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter;

36 U.S.C. § 220505(b)(9) (emphasis added).

The USOPC is "the corporation" referred to here. *Id*. USA Fencing is a "national governing body" (NGB) recognized by the USOPC to manage a specific amateur sport. 36 U.S.C. § 220521. "National governing body," moreover, is a defined term. 36 U.S.C. § 220501(b)(8) (" 'national governing body' means an amateur sports organization that is recognized by the corporation"). That term, NGB, is <u>not</u> included in the removal provision of section 220505(b)(9). Jurisdiction under the Sports Act is limited to actions brought against and removed by the "corporation," which is not a party to this action.

Courts are to "refrain from reading [those defined terms] into the statute when Congress has left [them] out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and alterations omitted)). Accordingly, "section 220505(b)(9) is not a source of federal subject matter jurisdiction" for an NGB. *Gonzalez v. United States Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1290 (S.D. Fla. 2019).

If Congress concluded that allowing NGBs to remove state court actions involved a substantial federal interest, it would have provided for them to remove when it did so for the USOPC. Simply *being* a recognized NGB is irrelevant. Congress created exactly one federal-forum provision in the Act, and its conditions are not met by any defendants here. No "substantial" federal interest in removal of state claims against sports organizations may be found where Congress did not extend the removal right to NGBs.

Additionally, the Sports Act specifically states that "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter". 36 U.S.C. § 220505(b)(9). Section 220527 of the Act is entitled "Complaints Against National Governing Bodies." This section merely says that an individual "may" file an internal complaint with the USOPC.

There are no civil enforcement provisions related to NGBs stated anywhere in the Sports Act. The absence of a federal private right of action is significant evidence that Congress did not intend federal courts to entertain these disputes. *Merrell Dow Pharms. v. Thompson,* 478 U.S. 804, 814 (1986) ("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is *insufficiently* 'substantial' to confer federal-question jurisdiction.") (emphasis added).

The Sports Act itself memorializes Congress's intent for NGBs to abide by state law and be sued in state court. *See* 36 U.S.C. § 220524(b) ("Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law."). By section 220524(b), Congress safeguarded against this precise situation:

an NGB claiming that it may evade state court jurisdiction over a dispute brought under state law. NGBs cannot hide behind their federal charter to break state law.

**4. Antidiscrimination Law Is a Core State Police Power That Would Be Disrupted by Preempting State Court Jurisdiction.**

The last factor to consider is whether the issue is capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 568 U.S. at 257. "This factor asks us to evaluate whether hearing [a certain matter] in federal court will 'attract[] a horde of original filings and removal cases raising other state claims . . . .'" *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 404 (4th Cir. 2024). Removing such cases would transfer the historic police powers of the state to federal government. Permitting removal of this case could bring an onslaught of removal actions for cases based on state discrimination claims. Claims in the domain of the police powers of the state are historically handled by the state. Making public accommodations claims a federal question would result in an uptick in state law and county code claims winding up in federal court.

The Supreme Court starts its police powers analysis "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 666 (D. Md. 2025). As discussed above, there is no clear and manifest purpose from Congress that indicates the Ted Stevens Act supersedes the historic police powers of the state when it comes to NGBs like USA Fencing. If anything, § 220524(b) says quite the contrary. 36 U.S.C. ("Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law.").

Consistent with the Supreme Court's mandate on police powers, Maryland also recognizes that legislating and protecting against discrimination in places of public accommodation is a police power of the state. *Barnes v. State ex rel Pinkney*, 236 Md. 564, 576 (1964). A police power is a "power inherent in the state" that is "necessary to preserve the public order, health, safety or morals" to the state of Maryland. *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423, 445 (2014) (citing *Tighe v. Osborne* 149 Md. 349, 131 A. 801, 809 (1925)).

Ms. Yukich's case is as local as it gets. She claims Defendants violated the Prince George's County Code, a local law. When a county effectuates laws against discrimination, it is undoubtedly exercising the police power of the State of Maryland. *Holiday Universal Club of Rockville, Inc. v Montgomery Cnty.*, 67 Md. App. 568, 574 (1986). Prince George's County is chartered and a "body corporate and politic." P.G. County Code § 1-101. The County has "all rights and powers of local self-government . . . ." *Id.* The Express Powers Act allows for Prince George's County to draft and implement local laws and grants the county co-extensive police power with the state. *See* Md. Code Ann., Local Gov't § 10-102, *see also Holiday Universal Club*, 67 Md. App. at 574. As part of its chartered powers, Prince George's County enacted Section 2-220 of its County Code prohibiting discrimination in places of public accommodation.

The Maryland Constitution allows for counties to form a charter. Article IX-A, § 3. Section 4 of Article XI-A of the Maryland Constitution requires that every charter provide for "an elective legislative body in which shall be vested the law-making power of said City or County." Section 3 elaborates on this power:

> [T]he County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said City or County including the power to repeal or amend local laws of said City or County

> enacted by the General Assembly, upon all matters covered by the express powers granted…

*Id.* The Express Powers Act codified the charter counties' authority to enact local laws, *see* Md. Code Ann., Local Gov't § 10-102, and Maryland courts in turn have reiterated that county codes are seen as valid exercises of the police powers of the state. *See Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 162 (1969). In *Montgomery Citizens League*, the court found that laws relating to "equal accommodation" are prima facie "regarded as a reasonable exercise in good faith of the police power to protect the peace and good order of the community and to promote its welfare and good government." *Id.* In that case, Montgomery County passed a law on housing discrimination. *Id.* at 153. The court held that the County Council was given police power through the Maryland Constitution. *Id.* at 160 ("The Council, having been given 'full' legislative power as specified by Art. XI-A, is also given statutory power to pass 'all' ordinances it deems expedient under the police power . . . ."). Additionally, the *Greenhalgh* court succinctly explained how the Express Powers Act effectively shares the police power with the counties. *Id.* at 160.

> The purpose and intent . . . of the express powers Act was to take from the legislature and give to the County the exclusive power to enact local laws, and the reason for this delegation of the power . . . were first to reduce . . . the log jam on unacted on measures in the late days of the legislative session in Annapolis which had caused passage of laws that had not received careful scrutiny or due consideration and, second, 'to permit local legislation to be enacted solely by those directly affected by it without interference by representatives from other sections of the state.

*Id.* at 160.

This same concept was reiterated in *Holiday Universal Club of Rockville, Inc. v. Montgomery County*. 67 Md. App. at 571. There, the then-named Court of Special Appeals confirmed that a county code prohibiting discrimination in places of public accommodation was

an exercise and extension of the police powers of the State of Maryland. *Id.* at 574-5. The Court explained that the Express Powers Act granted chartered counties a "co-extensive police power." *Id.* The Court found that "the legislative powers of a charter county were broad enough to permit the enactment of ordinances prohibiting discrimination in places of public accommodation." *Id.*

The Maryland state legislature enacted Md. Code Ann., State Gov't § 20-1202, which affords individuals a private right of action in state court to redress discriminatory acts that violate Howard, Montgomery, or Prince George's County Codes. This section provides an independent state cause of action for substantive anti-discrimination provisions. *Prince George's Cnty. v. Watts*, 494 Md. 615, 657 (2026). Ms. Yukich's PG County Code claim is thus clearly entrenched in the local laws of the State of Maryland. It naturally follows that the State of Maryland, in addition to Prince George's County, has every interest in policing the discrimination that occurs within its borders.

Defendants' removal would subordinate Prince George's County public accommodation statutory law to what they imagine are federal immunities—a defense that cannot provide a basis for federal question jurisdiction. *See Burrell*, 918 F.3d at 381. Nothing prevents Defendants from asserting alleged federal defenses in state court, but that does not translate into grounds for removal under the well-established law regarding federal jurisdiction—which simply does not exist in this case. Permitting Defendants to remove this action would disrupt the federal-state balance of power.

**iii. Plaintiff's Claims Are Not Completely Preempted by a Federal Law.**

The third avenue to federal question jurisdiction arises when the action falls within a "narrow exception" known as the complete preemption doctrine. *Lontz v. Tharp*, 413 F.3d. 435, 439 (4th Cir. 2005). "[Complete preemption] provides that if the subject matter of a putative state

law claim has been totally subsumed by federal law—such state law cannot even treat on the subject matter—then removal is appropriate." *Id.*

Complete preemption is demonstrated by satisfying two elements: "(1) the preempting statute displays a clear congressional intent to 'entirely displace" state law; and (2) the preempting statute creates an exclusive federal cause of action in areas of 'overwhelming national interest.'" *Skidmore*, 1 F. 4th at 212. Notably, the Supreme Court has identified only three laws that completely preempt state law claims (ERISA, the National Bank Act, and the Labor Management Relations Act). *Id.* at 212; *see also Risdorfer v. Ascentage Pharma Grp. Inc.*, No. ELH-23-987, 2023 WL 4664036 *9 (D. Md. July 19, 2013).

Under the first prong, the preemption statute must be the "exclusive cause of action for claims in the area the statute preempts." *Simms Showers LLP v. Jones*, No. 23-CV-2827-ABA, 2025 WL 2720186, *8 (D. Md. Sept. 24, 2025). Complete preemption requires a federal cause of action that displaces the state claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("[W]here this Court has found complete pre-emption—certain causes of action under the LMRA and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.")

As noted above, the Sports Act expressly states that it creates no private right of action. *See also Michels v. USOC*, 741 F.2d 155, 157–58 (7th Cir. 1984) ("Congress intended not to create a private cause of action under the Act."). Nothing in the Sports Act suggests that Congress intended that a statute that provides no private cause of action should preempt private causes of action under state public accommodation law.

In *Bennett v. USA Water Polo, Inc.*, No. 08-23533-CIV, 2009 WL 1089480 (S.D. Fla. Apr. 21, 2009), USA Water Polo, an NGB, tried to remove various state law tort claims to federal court,

arguing that they were "completely" preempted by the Sports Act. *Id.* at *2. The federal court looked to the text of the Sports Act to determine whether the plaintiff could have originally sued in federal court under that statute. It concluded:

> [T]he Defendants only invoke one statute (i.e., the Amateur Sports Act) as the only source of federal law that supports removal based upon federal-question jurisdiction, and this statute provides an internal mechanism-which includes a possible appeal through arbitration-within the United States Olympic Committee ("USOC") and its national governing bodies (e.g., USA Water Polo, Inc.) as the exclusive method to resolve disputes arising under the Amateur Sports Act. **Simply put, the district courts are not a forum that may provide relief for such disputes. Thus, the instant action is not a case over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.**

*Id.* at *2. (internal citations omitted; emphasis added). The absence of a federal remedy deprived the plaintiff of original federal jurisdiction over the claim, even if pled under federal law. *See also Gonzales*, 374 F. Supp. at 1289 (rejecting the Center for Safe Sport's reliance on the Sports Act to remove the matter to federal court, reasoning that § 220505(b)(9) can be relied on by the USOPC ("corporation") for federal jurisdiction, but not the Center for Safe Sport); *see also Foschi by Foschi v. U.S. Swimming, Inc.*, 916 F. Supp. 232, 242 (E.D.N.Y. 1996) (Court refused to use the Sports Act as a basis for complete preemption.).

In our case, the Sports Act does not provide a federal remedy for Ms. Yukich because it creates no avenue through which a federal court can adjudicate any issue, let alone an alleged violation of a state public accommodation statute. Thus, there is no "federal remedy" or cause of action under the Sports Act through which Ms. Yukich could pursue her claim.

Defendants' reliance on *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001), is misplaced. *Slaney*'s discussion of preemption does not occur in the context of determining whether a court has federal question subject matter jurisdiction, and its preemption analysis focuses on claims against USOPC—not an NGB like USA Fencing. *Slaney* addressed the narrow issue of whether an individual could challenge a USOPC eligibility determination for

international competition in court. *Id.* The court confirmed that the USOPC has exclusive jurisdiction over eligibility determinations relating to participation in international competition. *Id.* at 595, *see* 36 U.S.C. § 220503(3). The court went on, however, to explain that there are exceptions to this exclusive jurisdiction, citing to cases where an NGB breaches its own rules. *Id.* *Slaney* does not address the issue at hand: an NGB's denial of access to a public tournament under state civil rights laws. *Id.*

Defendants further cite *Behagen v. Amateur Basketball Association*, which provides even more support for this matter being brought in state court. 884 F.2d 524, 529 (10th Cir. 1989) ("[The NGB] is at least a nominal private party. It is further removed from congressional action under the [Sports Act].") *Belhagen* involves a plaintiff who brought an antitrust claim against an NGB and its executive director, claiming that they had monolithic control over the sport of basketball. *Id.* at 528. The court found that there was no antitrust cause of action because "the [NGB] could not be authorized under the Act unless it maintained exactly that degree of control over its sport that [Plaintiff] . . . alleges as an antitrust violation." *Id.* *Behagen* has nothing to do with removal from state court, nor state discrimination claims.

## V. <u>Conclusion</u>

For the foregoing reasons, Plaintiff, Dinah Yukich, requests that this Court remand this action to the Circuit Court of Prince George's County, and award Dinah Yukich fees and expenses in connection with the preparation of the instant motion.

Respectfully submitted,

Dated: November 6, 2026

*/s/ Jessica P. Weber*

Jessica P. Weber (No. 17893)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
(410) 962-1030
jweber@browngold.com

*/s/ Susan M. Cirilli*

Susan M. Cirilli (*admitted pro hac vice*)
Spector Gadon Rosen Vinci P.C.
One Logan Square
130 N. 18th Street, 18th Floor
Philadelphia, PA 19103
Telephone: (215) 241-8887/(215) 241-8873
scirilli@sgrvlaw.com

*Attorneys for Plaintiff Dinah Yukich*