**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DINAH YUKICH

*Plaintiff*,

v.

JESSICA SAXON, et al.

*Defendants*.

Case No: 8:26-cv-04238-LKG

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND**

Defendants United States Fencing Association (incorrectly pleaded as "USA Fencing") ("USA Fencing") and Jessica Saxon ("Saxon") (together, "Defendants"), by their undersigned counsel, submit this memorandum in opposition to the Motion to Remand filed by Plaintiff Dinah Yukich (ECF No. 11). For the reasons below, the Motion should be denied, and Plaintiff's request for fees and expenses should also be denied.

## I. INTRODUCTION

Plaintiff concedes that the parties are completely diverse. ECF No. 11-1 at 1 & n.3. Plaintiff is a Maryland citizen; USA Fencing is a Colorado nonprofit corporation; Saxon resides in New Jersey. The only diversity question is whether more than $75,000 is in controversy. It is.

In an attempt to try and avoid federal jurisdiction, Plaintiff's Complaint caps one category of relief—"damages"—at $74,999, one dollar below the threshold. It caps nothing else. In separate paragraphs of the same prayer for relief, Plaintiff demands uncapped attorneys' fees under a fee-shifting ordinance, a declaratory judgment, and an injunction requiring Defendants "to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants," without

limit as to place or time. ECF No. 1-1 at 11. Any value at all assigned to that additional relief carries the case past $75,000. Plaintiff's own motion confirms the point: it asks this Court to award Plaintiff fees for the remand motion itself. ECF No. 11-1 at 27; ECF No. 11-2.

The procedural history removes any doubt about what the cap is designed to do. Plaintiff first sued these Defendants over the same tournament on July 9, 2026, with no ceiling on recovery. Defendants removed. Plaintiff voluntarily dismissed and refiled the same claim on August 26, 2026. Instead, this time, Plaintiff added only a $74,999 damages cap. Plaintiff now embraces that sequence as deliberate. ECF No. 11-1 at 13. While a Plaintiff may sue for less than the jurisdictional amount, a plaintiff cannot demand more than $75,000 in total relief while labeling only part of it—particularly when that is designed to avoid jurisdiction. Despite Plaintiff's efforts, there is no doubt based on the relief which Plaintiff seeks and her prior complaint that the damages sought are in excess of $75,000 and diversity jurisdiction exists.

In addition to diversity jurisdiction, removal was proper, independently, under 28 U.S.C. § 1331, because Plaintiff's requested an injunction which cannot issue without deciding whether a county ordinance may dictate the athlete-eligibility rules that a national governing body recognized under the Ted Stevens Olympic and Amateur Sports Act which must apply at sanctioned competition. This requires the determination of a federal question. And because Defendants at a minimum had an objectively reasonable basis for removal, no fee award is permitted under 28 U.S.C. § 1447(c).

## II. BACKGROUND

### A. Plaintiff's First Action and the First Removal

On July 9, 2026, Plaintiff sued USA Fencing and Saxon in the Circuit Court for Prince George's County, *Dinah Yukich v. USA Fencing, et al.*, Case No. C-16-CV-26-004174 (the "First

Action"). ECF No. 1 ¶ 16. The First Action alleged the same exclusion from the women's events at the same tournament and sought (a) a declaration, (b) an injunction "requiring Defendants to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants," (c) "compensatory and punitive damages in an amount to be determined by this Honorable Court that exceeds $30,000," and (d) interest, costs, and reasonable attorneys' fees. First Action Compl., Relief Sought ¶¶ a–d. Defendants removed the First Action to this Court on August 19, 2026 (Case No. 8:26-cv-03295). Upon removal, Plaintiff voluntarily dismissed the action before Defendants answered or moved. ECF No. 1 ¶ 17.

**B. The Refiled Complaint**

Plaintiff then refiled the same allegations (i.e., that Plaintiff was ineligible to compete as a woman) in the same court on August 26, 2026, Case No. C-16-CV-26-005166. Plaintiff asserted a single count under the Prince George's County Code ("PGCC"), alleging that Defendants barred her from the women's events at the Cherry Blossom Open, a USA Fencing-sanctioned tournament held March 12–14, 2026 at the University of Maryland's Reckford Armory. ECF No. 1-1 ¶¶ 44–60. Her prayer for relief is materially identical to the First Action's except for one change. Plaintiff now asks for:

1. "A declaration that the actions of the Defendants were individually and collectively discriminatory under the controlling laws of Prince George's County, Maryland";
2. "An injunction or cease and desist order requiring Defendants to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants";
3. damages in an amount that exceeds $30,000 but does not exceed $74,999, exclusive of interest and costs;
4. "interests, costs of litigation and reasonable attorneys' fees"; and
5. "such other and further relief as this Honorable Court determines just and equitable."

ECF No. 1-1 at 11. The $74,999 limit appears only in the damages paragraph. The fee demand and the injunction are stated separately and without limit. Plaintiff also alleges that

Defendants acted with "actual malice" and in "willful disregard" of her rights, claims emotional harm, and demands a jury. ECF No. 1 ¶ 22.

**C. Removal and the Motion to Remand**

Defendants were served on September 11, 2026, and removed on October 8, 2026, under 28 U.S.C. §§ 1331, 1332, and 1441. ECF No. 1. Plaintiff moved to remand on November 6, 2026, conceding diversity of citizenship but disputing the amount in controversy and federal-question jurisdiction, and requesting fees and expenses. ECF No. 11; ECF No. 11-1 at 1, 27; ECF No. 11-2.

## III. LEGAL STANDARD

A defendant may remove any civil action over which the district courts have original jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing jurisdiction. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"; evidence is required only when the plaintiff contests the allegation, at which point "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014).

Where the initial pleading seeks nonmonetary relief, or where state practice permits recovery in excess of the amount demanded, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). Where a plaintiff seeks injunctive or declaratory relief, the amount in controversy is "the value of the object of the litigation," *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013), measured by "the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir.

2010). And where the governing law permits fee recovery, "potential attorneys' fees should be considered." *Francis*, 709 F.3d at 368.

## IV. ARGUMENT

### A. The Amount in Controversy Exceeds $75,000.

#### 1. The $74,999 cap reaches only damages; fees and injunctive relief sit on top of it.

Plaintiff's motion rests on a single premise: that Plaintiff's Complaint "clearly states her damages do not exceed $74,999." ECF No. 11-1 at 8. That is accurate as far as it goes, but the amount in controversy is not limited to damages. It is the value of everything the Complaint puts at stake. Plaintiff knew how to write a limit, and Plaintiff wrote one into the damages paragraph alone. The fee demand and the injunction appear in separate paragraphs with no limit. ECF No. 1-1 at 11. Read as written, the Complaint demands up to $74,999 in damages plus fees plus an injunction. Indeed, Plaintiff's own case information statement puts the damages between $30,000 to $100,000.

Plaintiff invokes the rule that courts accept "the sum demanded in good faith in the initial pleading." ECF No. 11-1 at 6 (citing *JTH Tax*, 624 F.3d at 638). That rule favors Defendants. The "sum demanded" here is not $74,999; it is $74,999 plus every dollar of fees and every dollar of injunctive value. Because the cap leaves one dollar of headroom, the question is not whether fees and the injunction are worth $75,000. ***It is whether they are worth more than one dollar.*** They plainly are.

Plaintiff's own filings answer that question. Plaintiff's Motion asks the Court to order Defendants to pay her "<u>attorneys' fees and expenses in connection with the preparation of her Motion to Remand</u>." ECF No. 11-2; ECF No. 11-1 at 27. And Plaintiff concedes that, as of removal, fees had already been incurred to draft and file the Complaint. ECF No. 11-1 at 7, 10 n.6.

Even on Plaintiff's narrowest view of what may be counted, more than one dollar of uncapped relief was in controversy at removal.

**2. Attorneys' fees recoverable under the County Code, including fees Plaintiff will reasonably incur after removal, count toward the threshold.**

The PGCC authorizes the recovery of attorneys' fees. PGCC § 2-203.3(d); ECF No. 1 ¶ 26. Plaintiff does not dispute that fees count toward the amount in controversy. ECF No. 11-1 at 7, 9. She argues instead that only fees incurred before removal may be considered, and that those fees are modest. *Id.* at 7, 12. That argument fails for two reasons: it misstates the governing rule, and Plaintiff's authorities turned on a failure of proof that is absent here. Moreover, the issue here is one dollar.

a. The Fourth Circuit counts reasonably anticipated fees, not merely fees already incurred.

Fees are generally excluded from the amount in controversy, but there are two exceptions: where the fees are provided for by contract, and where "a statute mandates or allows payment of attorney's fees." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013). The County Code's fee provision falls within the second exception. And when the Fourth Circuit applied that exception in *Francis*, it rejected the position Plaintiff takes here.

In *Francis*, the plaintiffs argued that the only amount the court could consider was the attorneys' fees they had already incurred in an underlying action. *Id.* The Fourth Circuit disagreed. It held that "potential attorneys' fees" available under Maryland law could be considered in determining the amount in controversy. The plaintiffs had already spent $66,347, and "common sense" dictated that the fees they would incur in the declaratory judgment action itself would exceed the remaining $8,653. *Id.*, *aff'd* 869 F. Supp. 2d 663, 669–70 (D. Md. 2012). The court thus counted fees that had not yet been incurred when the case was removed.

The Fourth Circuit has since applied *Francis* to count attorneys' fees on top of a $75,000 claim to satisfy the jurisdictional floor. *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016) (citing *Francis*, 709 F.3d at 368). This Court has done the same in a removed case. In *Williams v. Bank of New York Mellon*, the plaintiff claimed $65,000 in actual damages. The defendant submitted evidence of attorneys' fees, together with an affidavit regarding the typical costs of the plaintiff's counsel's firm, showing that fees would exceed the $10,000 difference. The Court denied remand. No. CCB-13-680, 2013 WL 2422895, at *2–*3 (D. Md. 2013).

The rule Plaintiff proposes, under which only the fees spent before removal count, cannot be reconciled with *Francis*. Plaintiff's timing authorities do not hold otherwise. *Porsche Cars North America* and *Alabama Great Southern* concern when jurisdictional facts are measured, not what relief is valued. ECF No. 11-1 at 7, 12. Indeed, *Francis* itself recited the rule that removability "depends upon the state of the pleadings and the record at the time of the application for removal," *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906), and still counted fees that had yet to be incurred. 709 F.3d at 368. A claim for fees through judgment is part of the relief Plaintiff demanded on the day of removal, just as her demand for prospective injunctive relief is.

<u>b. Plaintiff's cases turned on a lack of proof, not on a rule against counting future fees.</u>

Plaintiff relies on *Kelly v. Bank of America, N.A.*, No. CCB-12-2850, 2013 WL 3168018, at *3 (D. Md. June 18, 2013), and *Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761, 766 (D. Md. 2018). Neither adopted a categorical bar on anticipated fees. Each held only that the removing party had failed to prove its fee estimate.

In *Ndzerre*, the defendant offered "a speculative and unsupported assertion that some unspecified amount of attorneys' fees — as to the entire class — will exceed $75,000," without

"any particular justification for why attorney's fees will, as a matter of fact, push [the plaintiff's] damages to over $75,000." 318 F. Supp. 3d at 766. The Court did not reject *Francis*. It contrasted that bare assertion with *Francis* and *Williams*, where fees were counted on a proper showing. *Id.* (comparing *Francis*, 869 F. Supp. 2d at 669–70, and *Williams*, 2013 WL 2422895, at *2–*3).

*Kelly* is likewise a failure-of-proof case. The Court granted remand because the defendants did not show by a preponderance of the evidence that fees would exceed the difference between the jurisdictional threshold and the plaintiff's damages. 2013 WL 3168018, at *3. The *Kelly* plaintiffs had capped their damages at $50,000 for all claims combined, so the defendants' fee showing had to close a gap of roughly $25,000. *Id.*

This case differs from *Kelly* and *Ndzerre* on both counts.

**First, the gap is one dollar**. Plaintiff demands damages of up to $74,999, ***plus attorney's fees.*** Defendants need not show that Plaintiff's fees will be large, **only that more than one dollar of fees is in controversy**. Plaintiff concedes that fees had already been incurred at removal to draft and file the Complaint. ECF No. 11-1 at 7, 10 n.6. Plaintiff's own proposed order asks this Court to award her the fees incurred on the remand motion itself. ECF No. 11-2. Plaintiff's own documents thus puts the amount in controversy over $75,000.

*Second*, Defendants supply the proof the defendants in *Kelly* and *Ndzerre* lacked. This is not a routine case:

- Plaintiff is represented by two firms, including counsel admitted *pro hac vice*. ECF No. 11 at 1–2.

- Plaintiff has TWICE litigated the same dispute in the District of New Jersey through a full round of motion practice where her case was dismissed and Plaintiff has now filed a motion for reconsideration.[1]
- Plaintiff has filed two complaints in Prince George's County and a 36-page remand brief in this Court.
- The case involves a jury demand, allegations of "actual malice" supporting a punitive damages theory, and contested questions of federal law.
- Defendants have already advised the Court that after a decision on the motion to remand, they intend on filing a motion to dismiss.

Clearly, the attorney's fees incurred (and which will be incurred) are more than one dollar.

c. Plaintiff's fees already exceed the one dollar needed to exceed $75,000.

Because the gap is one dollar, the fee showing here is simple. Plaintiff concedes that fees had already been incurred at removal to draft and file the Complaint. ECF No. 11-1 at 7, 10 n.6. Since July 2026, Plaintiff's two firms have filed two complaints, two motions for special admission of out-of-state counsel, and the remand motion now before the Court. And Plaintiff's proposed order asks this Court to award her the fees incurred on this motion. ECF No. 11-2. Plaintiff cannot seek a fee award for her remand motion while maintaining that her fees in this action are worth less than one dollar.

Plaintiff also cannot avoid evidence that her fees will be more than a dollar on the ground that it postdates the Notice of Removal. *Cf. Ndzerre*, 318 F. Supp. 3d at 766 (noting that courts "typically limit the facts surrounding jurisdictional disputes to those set forth in the notice of removal"). The Notice expressly invoked Plaintiff's fee demand under *Francis* as a component of the amount in controversy. ECF No. 1 ¶¶ 25–26. And once a plaintiff contests the removal allegation, "both sides submit proof and the court decides, by a preponderance of the evidence,

[1] *See*, *Yukich v. Premier Fencing Club, et al*., 2:25-cv-18011-KSH-AME. On September 30, 2026, the Court granted the Motion to Dismiss this case. ECF 35. Another Action, *Yukich v. Chamley-Watson*, is also pending in the District of New Jersey. 2:26-cv-08140-KSH-AME.

whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

Under *Francis*, the fees Plaintiff will reasonably incur in prosecuting this action are part of the amount in controversy. Because Defendants have shown by a preponderance of the evidence that those fees exceed one dollar, the amount in controversy exceeds $75,000. And that is supported Plaintiff's own pleadings and moving papers.

**3. The injunction alone is worth more than the one dollar needed.**

Plaintiff values her injunction at "less than zero," reasoning that it would cost Plaintiff about $157 in entry fees for one tournament and would cost USA Fencing nothing. ECF No. 11-1 at 9 & n.5. That valuation addresses relief Plaintiff did not request.

First, the injunction is not limited to one tournament or to Prince George's County. The Complaint asks the Court to require Defendants "to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants." ECF No. 1-1 at 11. The prayer contains no geographic or temporal limit. Plaintiff now says that Plaintiff seeks only a county-wide order because the PGCC is a local law. ECF No. 11-1 at 8. But the Court values the relief the Complaint requests, not a narrower version offered in a remand brief. And even a county-limited order would require USA Fencing, which applies a single eligibility policy at every event it manages or sanctions, to administer one rule for sanctioned events in Prince George's County and another everywhere else. Saxon Decl. ¶¶ 6, 9.

Second, the cost to Defendants is substantial. *JTH Tax* permits the Court to value the injunction by its cost to the defendant. 624 F.3d at 639. USA Fencing is the national governing body ("NGB") for fencing, recognized by the United States Olympic & Paralympic Committee ("USOPC") under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq.*

(the "Sports Act"). Declaration of Jessica M. Saxon ("Saxon Decl."). To keep that recognition, USA Fencing must satisfy the USOPC's NGB compliance standards, which require each NGB to commit to ensuring "a fair and safe competition environment" for women consistent with Executive Order 14201 and the Sports Act. *Id.* ¶ 3. USA Fencing adopted that commitment in an addendum to its FenceSafe Handbook effective August 1, 2025, and its Eligibility Policy took effect the same day. *Id.* ¶ 4. USA Fencing adopted the Eligibility Policy to implement that USOPC requirement and to maintain its standing as a USOPC-recognized NGB. *Id.* USA Fencing applies the Eligibility Policy uniformly at the approximately 1,200 events it manages or sanctions each year in approximately 47 states, many of which form part of qualification pathways that cross state lines and lead to national team selection and international competition. *Id.* ¶¶ 5–6.

An order carving out an exception for Plaintiff would require USA Fencing to change how it operates, including its membership and event registration systems, which use each member's recorded competition sex to determine eligibility for Women's and Men's events; its event operations, including entry verification, seeding, pools, and results and points for sanctioned Women's events, and the instructions and training it gives the tournament organizers, bout committees, and referees who run sanctioned events; and its compliance processes, including how it documents and reports compliance with USOPC requirements. *Id.* ¶ 7. Each of those changes requires staff time, changes to systems and procedures, and communications with event officials, and none can be carried out without cost. *Id.* ¶ 8. A county-limited order would be more burdensome and more costly still, because USA Fencing would have to administer two eligibility rules at once, including for events within the same qualification pathway. *Id.* ¶ 9.

The exposure does not end there. An exception would require USA Fencing to depart from a policy it adopted to meet USOPC compliance requirements, and an NGB that does not satisfy

those requirements is subject to probation, conditional certification, or decertification. *Id.* ¶ 10; *see* 36 U.S.C. §§ 220505(c)(4), 220522(a)(18). In fiscal year 2024–25, USA Fencing received approximately $990,000 from the USOPC, about 7.4% of its total revenue, and that funding is provided because USA Fencing is the USOPC-recognized NGB. Saxon Decl. USA Fencing's participation in World Para Fencing likewise depends on designation and endorsement by the USOPC in its role as the National Paralympic Committee. *Id.* ¶¶ 12, 14. USA Fencing's national competitions also serve as the pathway to national team selection and international competition, and its membership revenue in fiscal year 2024–25 was approximately $2,668,294, about 21.8% of its total revenue. *Id*. An injunction that places USA Fencing's recognition at risk therefore puts at stake nearly $1 million in annual USOPC funding, in addition to the operational costs. *Id.* An injunction carrying that exposure is worth far more than the one dollar needed to cross the threshold.

Third, the value to Plaintiff is not $157. Plaintiff seeks ongoing eligibility to compete in a category for which she is not eligible, across every event Defendants manage or sanction. Plaintiff alleges that the exclusion caused her emotional harm, and she has pursued it through lawsuits in two states. Plaintiff's litigation conduct shows the right is worth far more to her than one entry fee.

**4. The damages demand is at or near the ceiling.**

Plaintiff seeks emotional-distress damages and alleges "actual malice" and "willful disregard" of her rights, the predicates for a punitive award. ECF No. 1 ¶ 22. Plaintiff's First Action carried no ceiling at all. *Id.* ¶ 17. Defendants do not contend that these items alone exceed $75,000 given the cap. They show that the capped damages will be pursued at or near $74,999, which leaves virtually no room before any value assigned to fees or the injunction crosses the threshold.

**5. The refiled cap does not defeat jurisdiction.**

Plaintiff argues that she is the master of her complaint and that *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938), permits her to sue for less than the jurisdictional amount. ECF No. 11-1 at 12–13. Defendants accept the general rule. However, this does not help Plaintiff, for three reasons.

First, Plaintiff did not sue for less than the jurisdictional amount. She limited one category of relief and left the rest open. *St. Paul* allows a plaintiff to forgo recovery above the threshold; it does not allow a plaintiff to seek more than $75,000 in total relief while capping only part of it. If Plaintiff wished to invoke *St. Paul*, she was required to limit her total demand, and she did not.

Second, the cap does not comply with Maryland pleading practice. Maryland Rule 2-305(b)(1) requires that a demand for a money judgment not exceeding $75,000 "include the amount of damages sought." Plaintiff pleaded a range instead. ECF No. 1 ¶ 15. A demand that does not state the amount sought does not fix the amount in controversy, and the Court may look to the removal allegations and the parties' proof. *See* 28 U.S.C. § 1446(c)(2)(A).

*Third*, The sequence of filings matters. Plaintiff dismissed her uncapped First Action after Defendants removed it. Plaintiff then refiled the same claim, over the same tournament, with a damages cap one dollar below the threshold. She now tells the Court that this was deliberate. ECF No. 11-1 at 13; ECF No. 1 ¶¶ 16–18.

Section 1446(c)(2) treats the sum demanded in the initial pleading as the amount in controversy only when that sum is "demanded in good faith." 28 U.S.C. § 1446(c)(2). The Court is therefore "not bound by the amount the Plaintiff pleads in the state action." Instead, it considers "the totality of the circumstances," including "the plaintiff's refusal to stipulate" that she will not seek or accept more. *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004)

(denying remand where plaintiff pleaded $74,000 while intending to seek more). A figure chosen to stay just below the threshold, by a plaintiff who knows her claim is worth more, is not a good-faith demand.

Each of those circumstances is present here. Plaintiff's first complaint put no limit on the value of the identical claim. Maryland law would allow her to recover more than her *ad damnum* by amendment, even after a verdict. *Falcinelli v. Cardascia*, 339 Md. 414, 427 (1995); Md. Rule 2-341(b) committee note. And Plaintiff has not offered to stipulate that her **total** recovery will not exceed $75,000.

The Court need not find that Plaintiff acted in bad faith to resolve this motion. It need only decline to treat a cap designed to defeat jurisdiction as conclusive and hold Plaintiff to the whole of what she pleaded. Measured that way, the amount in controversy exceeds $75,000, and the Court has diversity jurisdiction. The Court need not reach § 1331.

**B. Alternatively, Removal Was Proper Under 28 U.S.C. § 1331.**

Federal-question jurisdiction extends to a state-law claim when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Defendants acknowledge that this is a narrow category. Plaintiff's claim nonetheless falls within *Grable*.

**1. The federal issue is necessarily raised and actually disputed.**

Plaintiff challenges USA Fencing's application of its eligibility policy at a sanctioned event. ECF No. 1-1 ¶¶ 44–60. USA Fencing applies that policy because it is an NGB recognized by the USOPC under the Ted Stevens Act. 36 U.S.C. §§ 220521–220522; ECF No. 1 ¶¶ 32–35.

As a condition of recognition, an NGB must agree to submit to binding arbitration any controversy involving the opportunity of an amateur athlete to participate in amateur athletic competition. 36 U.S.C. § 220522(a)(4)(B).

Plaintiff cannot obtain the injunction Plaintiff requests without a ruling that a county ordinance may override the eligibility framework a federally recognized NGB applies at sanctioned events. That question is not a defense Defendants might raise; it is the content of the affirmative relief Plaintiff seeks. Plaintiff's First Action alleged that Saxon closed her internal grievance "[b]ecause [the Policy] has been approved by the USOPC." ECF No. 1 ¶ 36. Plaintiff dropped that allegation from the refiled Complaint. *Id.* The omission confirms that the federal framework is central to her claim. Defendants recognize that Plaintiff characterizes this issue as a federal defense under *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987), and *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019). ECF No. 11-1 at 1–2, 16. However, it is more than that. Plaintiff is asking this Court to rule on eligibility requirements set forth by federal law. The distinction is that Plaintiff's requested injunction would itself regulate NGB eligibility determinations, so the federal question is embedded in her right to relief.

**2. The federal issue is substantial.**

Substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Congress built the Ted Stevens Act around a single national structure for amateur athletic eligibility: one recognized NGB per sport, with participation disputes channeled through a uniform arbitral process. 36 U.S.C. §§ 220521–220522. Courts have recognized the USOPC's exclusive jurisdiction over eligibility matters within that framework. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 595–96 (7th Cir. 2001). Whether each county may impose its own eligibility rules on sanctioned competition is a pure question of law whose answer would govern every NGB and every sanctioned event nationwide.

Plaintiff relies on 36 U.S.C. § 220505(b)(9), which grants the USOPC a removal right, to argue that Congress's silence as to NGBs forecloses jurisdiction. ECF No. 11-1 at 18–20. Defendants do not invoke § 220505(b)(9); they invoke § 1331. A specific removal right for one entity does not displace the general federal-question jurisdiction available to all defendants, and *Gonzalez v. U.S. Center for SafeSport*, 374 F. Supp. 3d 1284, 1290 (S.D. Fla. 2019), on which Plaintiff relies, addressed only whether § 220505(b)(9) itself supplied jurisdiction. Plaintiff also cites § 220524(b), which preserves an NGB's state-law "duty of care." ECF No. 11-1 at 20–21. That provision concerns safety obligations; it does not authorize local regulation of eligibility categories. Plaintiff's arguments are thus misplaced.

**3. Federal resolution will not disrupt the federal-state balance.**

The final *Grable* inquiry asks whether a federal forum may hear the case "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). When the other requirements are met, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." That interest can be vindicated "without disrupting Congress's intended division of labor between state and federal courts." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable*, 545 U.S. at 313–14). Plaintiff treats this requirement solely as a question of caseload. ECF No. 11-1 at 21. But the inquiry asks what division of labor Congress intended. Here, Congress's intent is written into the statute.

a. <u>Congress assigned eligibility to a national structure</u>.

Congress did not leave athlete eligibility to local regulation. Under the Ted Stevens Act, an "amateur athlete" is one "who meets the eligibility standards established by the national governing body . . . for the sport in which the athlete competes." 36 U.S.C. § 220501(b)(1). To be certified, an NGB must show that it is "autonomous in the governance of its sport." It must also

show that it "independently decides and controls all matters central to governance," "does not delegate decision-making and control of matters central to governance," and is "free from outside restraint." *Id.* § 220522(a)(5). Few matters are more central to governing a sport than deciding who may compete in which category.

Congress also legislated directly on nondiscrimination and the resolution of disputes. A certified NGB must provide equal opportunity to participate "without discrimination on the basis of race, color, religion, sex, age, or national origin." It must also give "fair notice and opportunity for a hearing" before it declares any athlete ineligible. *Id.* § 220522(a)(8). Where an NGB conducts separate programs for men and women, it must "provide equitable support and encouragement for participation by women." *Id.* § 220524(a)(6). NGB must maintain "procedures for the prompt and equitable resolution of grievances of its members." *Id.* § 220522(a)(14). As a condition of certification, it must agree to binding arbitration of any controversy involving an athlete's opportunity to participate. *Id.* § 220522(a)(4)(B). And Congress charged the USOPC with facilitating "the resolution of conflicts or disputes" that "arise in connection with" athletes' "eligibility for and participation in" protected competition. *Id.* § 220505(c)(5).

The question Plaintiff raises is therefore not one Congress overlooked. Congress gave the eligibility decision to the NGB and subjected it to a federal nondiscrimination standard. It also required a federal process for resolving disputes over it. A federal forum deciding whether a county ordinance may override that allocation is applying the balance Congress approved, not disturbing it.

b. <u>Only a federal forum can supply the uniformity that structure requires</u>.

Plaintiff's requested injunction is not confined to Prince George's County. It would require Defendants "to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants," without geographic or temporal limit. ECF No. 1-1 at 11. If a county ordinance can

dictate eligibility at federally sanctioned competition, so can every state, county, and municipality in which an NGB sanctions an event. Congress required an NGB to be "free from outside restraint." 36 U.S.C. § 220522(a)(5). Under Plaintiff's theory, it would instead have to administer as many eligibility rules as there are local governments, and competitors in one national pathway would face different eligibility rules depending on the venue.

Whether federal law permits that result is a question that affects every NGB and every sanctioned competition in the country. It is exactly the kind of question for which there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." [3]*Gunn*, 568 U.S. at 258. A state trial court applying a county ordinance is poorly placed to decide it, and its answer would bind no other jurisdiction. That would invite the patchwork the federal structure exists to prevent.

c. <u>The question is purely legal, not fact-bound</u>.

The Supreme Court has declined federal jurisdiction where the embedded issue was "fact-bound and situation-specific." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). This case is the opposite. The question is whether a local ordinance may dictate the eligibility rules a federally certified NGB applies at sanctioned competition. That question turns on the text and structure of the Ted Stevens Act, not on what happened at a single tournament, and a ruling on it would resolve the issue for every similar case. *See id*. at 700 (explaining that *Grable* "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous . . . cases'").

d. <u>The effect on federal caseloads is negligible</u>.

Defendants do not dispute that Maryland, and its counties may regulate public accommodations, and this case does not ask the Court to displace that authority generally. Exercising jurisdiction here reaches only claims that seek to override the eligibility determinations

of a federally certified NGB at sanctioned competition. Ordinary discrimination claims against restaurants, retailers, employers, and local clubs would stay in state court. That category is narrow, and recognizing it will not "attract a horde" of ordinary discrimination cases to federal court. ECF No. 11-1 at 21. *Grable* found the fourth requirement met for the same reason: cases presenting a contested federal question of that kind would be rare, so federal jurisdiction would have only a "microscopic effect on the federal-state division of labor." 545 U.S. at 315.

Each consideration the fourth requirement asks about favors a federal forum. Congress assigned eligibility to a national body, required uniform federal procedures for disputes over it, and left no room for local regulation of who may compete. Exercising jurisdiction here preserves that structure, and it does so without drawing ordinary state-law claims into federal court.

**C. Plaintiff Is Not Entitled to Fees.**

Fees under 28 U.S.C. § 1447(c) may be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants had such a basis. Plaintiff concedes diversity. Plaintiff's Complaint caps only damages, one dollar below the threshold, while seeking uncapped fees and an unlimited injunction, and she added that cap only after Defendants removed her First Action. The amount-in-controversy question is, at a minimum, fairly debatable. Plaintiff's fee request should be denied even if the Court grants remand.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Remand and deny her request for fees and expenses. In the alternative, should the Court have any doubt regarding the amount in controversy, Defendants request leave to conduct limited jurisdictional discovery, or that any remand be conditioned on Plaintiff's binding stipulation that

she will neither seek nor accept a total recovery, including attorneys' fees and the value of any injunctive relief, exceeding $75,000.

Respectfully submitted,

/s/ Imoh E. Akpan
Imoh E. Akpan (#30070)
Andrea Olsen-Leyden (#21193)
Goldberg Segalla LLP
111 South Calvert Street, Suite 2000
Baltimore, MD 21202
Ph: (443) 615-7516
Fx: (443) 615-7599
iakpan@goldbergsegalla.com
aolsenleyden@goldbergsegalla.com
*Attorneys for Defendants United States Fencing Association (incorrectly pleaded as USA Fencing) and Jessica Saxon*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November 2026, a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion to Remand, was e-filed and served via the Court's CM/ECF system upon all counsel of record.

/s/ Imoh E. Akpan
Imoh E. Akpan (#30070)