**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DINAH YUKICH,<br><br>Plaintiff,<br><br>v.<br><br>USA FENCING and JESSICA SAXON,<br><br>Defendants. | Case No. 8:26-cv-04238-LKG |

**DECLARATION OF JESSICA SAXON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

I, Jessica M. Saxon, under penalty of perjury, declare as follows:

1. I am General Counsel of the United States Fencing Association, incorrectly pleaded as "USA Fencing" ("USA Fencing"), and a named defendant in this action. I make this declaration based on personal knowledge acquired in my position and on USA Fencing business records that I have reviewed. This declaration does not waive the attorney-client privilege or work-product protection.

**USA Fencing's Status and Eligibility Policy**

2. USA Fencing is the national governing body ("NGB") for the sport of fencing in the United States. It is recognized as such by the United States Olympic & Paralympic Committee ("USOPC") under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 et seq. (the "Sports Act"). USA Fencing is also the member federation for the United States in the Fédération Internationale d'Escrime ("FIE"), the international federation for fencing. USA Fencing participates in World Para Fencing ("WPF"), the international federation for wheelchair fencing, as described in paragraph 12.

3. To keep that recognition, USA Fencing must satisfy the USOPC's NGB compliance standards, as explained in the USOPC's Implementation Guide for NGB Compliance Standards (Oct. 20, 2025) (the "Guide"). Under the USOPC Athlete Safety Requirements set out in the Guide, each NGB must adopt the following statement to comply with Executive Order 14201: "NGB is committed to protecting opportunities for athletes participating in sport. NGB will continue to collaborate with various stakeholders with oversight responsibilities, e.g., IOC, IPC, IF, to ensure that women have a fair and safe competition environment consistent with Executive Order 14201 and the Ted Stevens Olympic & Amateur Sports Act, 36 U.S.C. § 22501, et. seq."

4. USA Fencing adopted that statement in an addendum to its FenceSafe Handbook, effective August 1, 2025. On the same date, USA Fencing's Transgender & Non-Binary

Athlete Eligibility Policy (the "Eligibility Policy") took effect. The Eligibility Policy limits the Women's category in sanctioned competition to athletes of the female sex. The Men's category is open to all athletes who are not eligible for the Women's category. USA Fencing adopted the Eligibility Policy to implement the USOPC requirement described in paragraph 3 in response to the USOPC's direction that NGBs ensure a fair and safe competition environment for women consistent with Executive Order 14201 and the Sports Act, and to maintain its standing as a USOPC-recognized NGB.

5. USA Fencing manages or sanctions approximately 1200 events each year in approximately 47 states, including national championships and regional, local, and veteran events. Many of these events are part of qualification pathways that cross state lines and lead to national team selection and international competition.

6. USA Fencing applies the Eligibility Policy uniformly at every event it manages or sanctions, regardless of where the event is held.

**Operational Effect of the Requested Injunction**

7. Plaintiff asks the Court to require Defendants "to permit Plaintiff to participate in women's fencing events managed or sanctioned by Defendants." ECF No. 1-1 at 11. Complying with that order would require USA Fencing to make an exception to the Eligibility Policy and to change how it operates, including:

a. its membership and event registration systems, which use each member's recorded competition sex to determine eligibility for Women's and Men's events, separately from the gender identity a member may list in their profile;

b. its event operations, including entry verification, seeding, pools, and results and points for sanctioned Women's events, and the instructions and training it gives the tournament organizers, bout committees, and referees who run sanctioned events; and

c. its compliance processes, including how USA Fencing documents and reports its compliance with USOPC requirements.

8. Each of these changes would require USA Fencing staff time, changes to its systems and procedures, and communications with event officials. USA Fencing could not carry out any of them without cost.

9. If the order applied only to events in Prince George's County, USA Fencing would have to administer one eligibility rule for events there and a different rule everywhere else, including for events within the same qualification pathway. Administering two eligibility rules at once would be more burdensome and more costly than administering one.

**Risk to NGB Certification, Funding, and Membership**

10. An exception would require USA Fencing to depart from a policy it adopted to meet USOPC compliance requirements. Under the USOPC Bylaws, an NGB that does not

satisfy the USOPC's compliance standards is subject to probation, conditional certification, or decertification.

11. In the event of non-compliance, the USOPC reserves the right to require an NGB to adopt required reforms that include these Best Practices. (Implementation Guide for NGB Compliance Standards at iv)

12. Furthermore, as a condition of certification, every NGB must "commit to meeting any minimum standard or requirement set forth by the [USOPC]." The USOPC "reserves the right to require specific reforms to address those issues, regardless of their inclusion in the Act, the USOPC Bylaws, or USOPC policy." (Implementation Guide for NGB Compliance Standards at v).

13. USA Fencing's records show that in fiscal year 2024–25, it received approximately $990,000 in revenue from the USOPC, or about 7.4% of its total revenue. That funding is provided to USA Fencing because it is the USOPC-recognized NGB for fencing.

14. Under Article 2.1.1, including Article 2.1.1(b), of the FIE Statutes, membership in the FIE is held by the national federation for fencing in each country, and USA Fencing holds that membership for the United States. WPF is part of World Abilitysport ("WAS"). Under Article 6 of the WAS Articles of Association, and the policies of the WAS Trustees referenced there, a nation's National Paralympic Committee may designate a member or endorse one. Because WAS is a multi-sport organization, the full member for the United States is Move United, and USA Fencing participates in WPF under that membership. Each of those designations and endorsements is made by the USOPC in its role as the National Paralympic Committee for the United States. As the FIE member federation, and through the WAS structure, USA Fencing selects and enters the athletes who represent the United States in FIE and WPF competition.

15. USA Fencing's records show that in fiscal year 2024–25, its membership revenue was approximately $2,668,294, or about 21.8% of its total revenue. USA Fencing's national competitions serve as the pathway to national team selection and international competition.

16. The USOPC funding described in paragraph 13 depends on USA Fencing's recognition as the NGB for fencing, and USA Fencing's participation in WPF competition described in paragraph 14 depends on designation and endorsement by the USOPC. That recognition is subject to the compliance standards described in paragraphs 3 and 10. These matters are in addition to the operational changes described in paragraphs 7 through 9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 20, 2026, in Pennsville, NJ.

Jessica M. Saxon